**Jack GILPIN, et al., Plaintiffs,**

v.

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, et al., Defendants.**

No. 85–3479.

United States District Court,
C.D. Illinois,
Springfield Division.

July 30, 1986.

Lee K. Zelle, Springfield, Ill., for plaintiffs.

Robert E. Wagner, Christina M. Saunderson, Asst. Attys. Gen., Springfield, Ill., Gilbert A. Cornfield, Chicago, Ill., John L. Sullivan, Washington, D.C., for defendants.

## ORDER

MILLS, District Judge:

The parties offer cross motions for summary judgment. Fed.R.Civ.P. 56. The Court finds that liability rests with the Defendants who have denied the Plaintiffs their rights to procedural due process in violation of 42 U.S.C. § 1983. Jurisdiction is appropriately premised on 28 U.S.C. § 1331.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the Court must view the facts in the light most favorable to the party against whom summary judgment is entered and give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Cross motions for summary judgment require no less careful scrutiny of the factual allegations. *LaCourte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.1983). The Court's inquiry "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the Plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onis* of proof is imposed.'" *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), (*quoting Improvement Co. v. Munson,* 14 Wall. 442, 448, 81 U.S. 442, 448, 81 U.S. 442, 20 L.Ed. 867 (1872) (emphasis in original).

The posture of this particular litigation facilitates adherence to these guidelines. The parties have hammered out an understanding of the facts by dent of hard labor.

The Plaintiffs are employees of the State of Illinois, specifically the Department of Public Aid. The employees of the Department of Public Aid are divided into at least two bargaining units for the purpose of administering a collective bargaining agreement entered into between the State of Illinois and Defendant American Federation of State, County, and Municipal Employees (AFSCME). Although none of the Plaintiffs are members of Defendant AFSCME, they have been assigned to one of two bargaining units: RC–62 or RC–63. As of August 30, 1985, there were 12,289 state employees assigned to these two bargaining units and approximately half of these employees were not members of Defendant AFSCME.

On February 10, 1984, Defendant AFSCME entered into an agreement with the Illinois Department of Central Management Services (CMS), an agency of the state that has statutory authority to negotiate and administer collective bargaining agreements. The February 10th agreement provided for the assessment and col-

lection of "fair share" contributions from state employees who were not members of AFSCME.[1]

"Fair share" assessments are fees deducted from the paychecks of non-union employees and paid to the union as a pro rata assessment of the costs of conducting collective bargaining activities from which the non-union employees necessarily benefit. The parties do not contest the constitutionality of "fair share" assessments, rather the Plaintiffs object to the procedure whereby the fees were collected.

After entering into the "fair share" agreement, CMS notified various state department managers by letter of the impending "fair share" assessments in late April and again in early July 1984. By August 30, 1985, a majority of the employees in bargaining units RC–62 and RC–63 became members of Defendant AFSCME. Thereupon Defendant AFSCME notified CMS of its intention to seek "fair share" deductions from all employees who were not members of the union. Pursuant to the agreement entered into between AFSCME and CMS, AFSCME certified the "fair share" contribution to be 90% of regular union dues.

On September 6, 1985, CMS informed the various state agencies that deductions for "fair share" contributions would begin with the September 16 through 30 pay period. Between September 10 and September 30, 1985, members of Defendant AFSCME placed notices of the impending "fair share" assessments on bulletin boards throughout the state offices. (Exhibits affixed to Defendant AFSCME's reply to Plaintiffs' motion for a preliminary injunction.) The notices indicated that the "fair share" assessment would be "90% of local union dues paid by AFSCME members." They gave a brief explanation of the manner in which the percentage was determined. And they stated that the deductions would begin with the September 30, 1985, pay period. Both notices provided the following information regarding objections to and appeals from the "fair share" assessments:

> Non-members have the right to object to the amount of the "fair share" fee and may do so (1) through AFSCME's internal procedure; or (2) by filing an unfair labor practice charge with the Illinois Public Employee Labor Relations Board, 320 West Washington St., Suite 500, Springfield, Illinois;
>
> For further information:
> write: AFSCME Council 31, Attention Jackie Kinnamen, 201 North Wells St., #1850, Chicago, Illinois 60606.

This suit was filed on September 27, 1986. The first pay period during which "fair share" assessments were deducted ended on September 30, 1986. Two days later, CMS sent a letter to all affected employees signed by Bureau of Personnel Manager Robert H. Tapscott which in substance tracked the notices posted by Defendant AFSCME. (Plaintiff's Exhibit 6). With respect to the opportunity to object and appeal the CMS letter provided:

> You have a right to challenge the amount of the fair share assessment levied by the union. You can obtain more information about how to challenge the assessment amount by writing:

---

**1.** The relevant portion of the agreement provides:

> Pursuant to Section 3(g) of the Illinois Public Labor Relations Act effective July 1, 1984, the parties agree that in bargaining unites in which AFSCME has or attains majority union membership, or receives a majority decision by referendum as set forth below, subsequent to July 1, 1984, the following shall be applicable: Employees covered by this agreement who are not members of the Union or do not make application for membership within fifteen (15) days of employment, shall be required to pay, in lieu of dues, their propor-

tionate share of the cost of the collective bargaining process, contract administration and the pursuance of matters affecting wages, hours and conditions of employment, but not to exceed the amount of dues uniformly required of members. The proportionate share payment, as certified by the Union pursuant to Section 6(e) of the Illinois Public Labor Relations Act, shall be deducted by the Comptroller from the earnings of the non-member employees and shall be remitted semi-monthly to the Union.

Complaint Exhibit 1 at 1.

AFSCME, Attention Jackie Kinnamen, 201 North Wells St., Suite 1850, Chicago, Illinois 60606 ... Should you have any further questions, you may contact the Bureau of Personnel, Division of Employee and Labor Relations, at (217) 782–8164.

The day following the appearance of the CMS letter, 31 non-union employees filed complaints with the Illinois State Labor Relations Board (SLRB).[2] One week later, the first paychecks subject to the "fair share" deductions were issued.

At the time the "fair share" deductions were assessed and the notices were promulgated, the Illinois State Labor Relations Board (SLRB) had established no specific rules or regulations for considering objections to the assessments. On October 22, 1985, the SLRB directed its counsel to draft such rules and regulations and to report back by November 20, 1985. On November 20, the SLRB assumed jurisdiction over the complaints lodged against the "fair share" assessments. Five days later, AFSCME established an escrow account for the "fair share" assessments paid by all non-union employees whose objections to the assessments were known to AFSCME. The SLRB issued a complaint on the consolidated charges on December 3, 1985. A hearing on that complaint has been postponed several times at the request of the complainants.

Although the objection and appeal procedure advertised in AFSCME's posted notices was, in fact, not yet available, Defendant AFSCME did have in place an internal union grievance procedure. Under this procedure, an objecting, non-union employee may file a written challenge with the union to be reviewed by the Executive Board of AFSCME Council 31. An objector may appeal the Executive Board's decision to a professional arbitrator chosen and compensated by agreement of the union *and* the objector. As a second internal union remedy, a non-union employee may file a challenge directly with the union local's International affiliate and obtain a hearing from a designated hearing officer. The record does not indicate the existence of, or the nature of, any appeal or review of the decision by the International's hearing officer.

### Law

The Plaintiffs contend that this cause of action is controlled by the Supreme Court's decision in *Chicago Teachers Union, Local No. 1 v. Hudson*, —— U.S. ——, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). The Defendants respond (1) that this Court should observe the doctrine of abstension; (2) that they have afforded the Plaintiffs all the procedure due; (3) that any procedural defects have been or are being cured and thus mooted; and (4) that the procedural guidelines outlined in *Hudson* should only be applied prospectively. After a review of the materials submitted for consideration, the Court finds that the *Hudson* decision does control the resolution of this cause, that the procedure outlined therein was violated by the Defendants, and that a remedy should be fashioned.

 The equitable doctrine whereby a federal court abstains from considering a complaint pending resolution of the same or similar claims by a state tribunal is applicable where the complainant has the option of choosing between a federal or state forum and where the resolution of unsettled questions of state law will end the controversy. *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); see also *Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). Defendant AFSCME apparently contends that if this Court were to abstain and thereby allow sufficient time for correction of any procedural flaws, the Plaintiff's cause of action would thereby be mooted. Such an abstension would not, however, vindicate those constitutional

---

**2.** The Court is informed that subsequent to the filing of this cause additional employees have filed complaints with the SLRB.

rights Plaintiffs were and continue to have been denied. See *Hudson*, 106 S.Ct. at 1075 n. 14.

■ The parties do not dispute that the deduction of "fair share" fees impinges on recognized liberty and property interests to which the strictures of the Fourteenth Amendment's due process clause apply. The parties' dispute lies in determining the precise nature of the procedures that are due. However, this dispute has been effectively resolved by the United States Supreme Court:

We hold today that the constitutional requirements for the union's collection of agency fees include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending.

*Hudson* at 1078. The procedure which Defendant AFSCME instituted in the fall of 1985 fails both the notice and appeal criteria outlined by the Supreme Court.

I. The "notices" published by the Defendants fail the test of adequacy in three respects.

First, the notice must inform all interested parties of the rationale behind the calculation of the "fair share." "The union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor." *Hudson* at 1076 n. 18 (Relatively large expenditures, the Supreme Court indicates, should be divided into their component parts so as to demonstrate with specificity the nature of the expenditure). The notices to which the Plaintiffs object merely indicated the union's conclusion as to the appropriate percentage of its budget expended on negotiation and failed to give detailed figures verified by an independent audit.

The second inadequacy in the notice Defendants provided Plaintiffs lies in the failure to provide sufficiently specific informa-

tion on the procedure for lodging an objection to the "fair share" assessment. The notices posted by Defendant AFSCME did inform potential objectors that two avenues of redress existed and provided addresses for the SLRB and AFSCME Council 31. The notices did not contain phone numbers for the respective offices and, more importantly, they did not explain the procedure for making an objection known. The Supreme Court has indicated that "the nonmembers 'burden' is simply the obligation to make his objections known." *Hudson* at 1076 n. 16. The notices posted by the Defendants, by their lack of information regarding the procedure for objection, imposed upon the Plaintiffs not only the burden of objecting but also the burden of discovering how to object. Adequate notice entails information sufficient for an individual, unsophisticated non-union employee to file a written objection without further investigation.

■ Adequate notice also implies timely notice. Although the timing of the notice provided to the Plaintiffs in *Hudson* was not at issue before the Supreme Court, this Court finds that adequate notice requires notification a sufficient time prior to the deprivation so as not to present the deprived party with a *fait accompli*. In the present situation, although Defendant AFSCME notified the Department of Central Management Services of its intention to collect "fair share" assessments on August 30, 1985, neither the union nor the state made any attempt to notify the Defendants until September 10, 1985 (at the earliest), five days prior to the commencement of the first pay period during which "fair share" fees were to be assessed. Without establishing an arbitrary period of time, the Court finds that the period of time necessary to establish the mechanics for deduction of the "fair share" fees is adequate for providing notice to any potential objectors. Once the union informs management of its desire to assess "fair share" fees in a specified amount, those against whom the fees will be assessed

should also be notified of their right to object.

■ II. In addition to notice of their right to object, employees subject to "fair share" assessments are also entitled to "a reasonably prompt decision by an impartial decisionmaker." *Hudson* at 1076. The notices posted by the Defendants and the additional information available to objectors who write the union indicate three alternative avenues of appeal. An objecting non-union employee may file a charge with the State Labor Relations Board, or he may file an objection with AFSCME Council 31, or he may file an objection with the AFSCME International. *Hudson* requires only that the available procedure afford an objector "to have his objections addressed in an expeditious, fair, and objective manner." *Hudson* at 1076; see also *Id.* at 1076 n. 19.

None of the procedures available to the Plaintiffs here satisfy the minimum requirements of *Hudson.* The mechanism for mounting a challenge through the State Labor Relations Board, while potentially adequate, was essentially non-existent at the time the Defendants began deducting "fair share" fees. The appeal process through the AFSCME International fails for its use of hearing officers employed and therefore controlled by the union. *Hudson* at 1077. The appeal process through the union local has the distinct advantage of permitting both the objector and the union to select a mutually agreed upon arbitrator; however, an objector obtains arbitration of his claim only after review of his complaint by the local's Executive Board and thus falls short of the expeditious, fair and objective standard. None of the opposed methods of appeal provide "a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker." *Hudson* at 1078.

■ III. The union does appear to have satisfied the third major requirement of a valid "fair share" fee system by having established "an escrow account for the amounts reasonably in dispute while such challenges are pending." *Id.* at 1078. However, the *ex post* establishment of an escrow does not cure the procedural defects with respect to notice and appeal.

■ Contrary to the Defendants contentions, the Court finds that the constitutional strictures against which the Defendants' procedures have been measured were sufficiently established at the time the Defendants implemented their "fair share" assessments to require Defendants to adhere to them. The 7th Circuit's opinion in *Hudson v. Chicago Teachers Union Local No. 1,* 743 F.2d 1187 (7th Cir.1984), had been handed down prior to the implementation of the "fair share" deductions challenged here. While much of the Seventh Circuit's opinion was advisory in nature, it did provide some guidance which the Defendants chose to abjure. Moreover, in *Hudson,* the Supreme Court specifically directed that the district court retroactively fashion a remedy in accordance with its elucidation of the procedures that were due.[3]

### Remedy

Having found that the Plaintiffs rights were, indeed, violated, the Court now, of necessity, considers the question of an appropriate remedy. In fashioning the appropriate remedy, the Court turns to those officers who have thus far served the Court well during the pendency of this cause. The remedy shall include injunctive relief as well as damages and fees to the extent warranted. Its details should, in the first instance, be proposed by the parties who, in the nature of things, best understand the practical considerations of implementation. Its scope should be sufficiently

---

**3.** While the Court finds that the procedural requirements for the deduction of "fair share" fees were sufficiently established to justify retroactive application of the remedy to be fashioned, the Court's finding should not be construed as a determination that the legal standards were so clear as to justify the assessment of damages against the state officers who are Defendants here. The Court has previously ruled that the law with respect to "fair share" deductions was not so clear as to pierce the special immunity afforded our public decisionmakers.

broad to provide for all those who have been subject to procedures which essentially, if not intentionally, were unfair.

To this end, the Plaintiffs are directed to file a memorandum with a proposed remedy and Defendants shall respond. The Court will then convene a hearing to be attended by all parties—at which the precise details of the remedy will be determined.