**Howard ELLIS, Plaintiff,**

v.

**WESTERN AIRLINES, INC., and Air Transport Employees, Defendants.**

Civ. No. 86–1041–E.

United States District Court,
S.D. California.

Dec. 22, 1986.

Mark T. Bennett, Merrill, Schultz & Wolds, Ltd., San Diego, Cal., Raymond La-Jeunesse, Jr., National Right to Work Legal Defense Foundation, Inc., Springfield, Va., for plaintiff.

Robert A. Bush, Los Angeles, Cal., Merrill Schultz & Wolds Ltd., San Diego, Cal., Raymond J. LaJeunesse Jr., Springfield, Va., Western Airlines, Robert A. Bush, Ira L. Gottlieb, Los Angeles, Cal., for defendants.

MEMORANDUM DECISION

ENRIGHT, District Judge.

BACKGROUND

Howard Ellis is an employee of Western Airlines. Western is, however, a peripheral defendant. The central defendant is Air Transport Employees (hereinafter "ATE"), the union that serves as the exclusive bargaining agent for Western employees.

Mr. Ellis is not a member of ATE. Nevertheless, ATE is pursuing the collection of delinquent dues against him, at the rate of $15.00 per month since January 1983. In lieu of paying, he filed this action seeking declaratory and injunctive relief. Mr. Ellis asserts that ATE's procedures for assessing and collecting dues from nonmember employees is constitutionally defective.

The Railway Labor Act was amended in 1951 allowing formation of union shops in the transportation industry. Section 2, Eleventh, of the amended Act specifically permits conditioning employment on union membership. 45 U.S.C. § 152, Eleventh. Congress' purpose in requiring union membership was to eliminate "free riders" who were gratuitously benefitting from the union's bargaining activities.

Subsequently, however, the Supreme Court held that § 2, Eleventh, does not authorize the union to spend objecting employees' dues for political or ideological causes. Thus, an objecting employee could only be required to contribute towards union expenses that were directly related to collective bargaining activities. *Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1960).

In 1975, Howard Ellis and several other employees filed suit against the Brother-

hood of Railway, Airline and Steamship Clerks (hereinafter "BRAC"). BRAC was then the exclusive bargaining agent for Western employees.

The complaining employees asserted that BRAC was spending their dues on political and ideological activities which they did not endorse. The case was ultimately resolved by the Supreme Court. *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks, etc.*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). The Court held that BRAC could only charge objecting employees for expenses related to collective bargaining and that the union's procedure of collecting dues and then rebating a portion was constitutionally prohibited.

In 1980, however, *BRAC* was decertified as the bargaining agent for Western employees. In its stead, ATE was certified. On March 16, 1981, Western and ATE signed a letter of agreement providing that employees must either maintain full membership in ATE or pay a "service charge" equivalent to membership dues. Those paying the "service charge" qualify as "nonmember employees."

Apparently, Howard Ellis did not pay either. Nor did he object to the procedure until the events that precipitated this suit.

On May 5, 1985, ATE advised Mr. Ellis that his dues were delinquent since January 1983. The notice requested payment of $420.00, representing 28 months of unpaid dues of $15.00. ATE mailed Mr. Ellis a second notice on June 12, 1985, and a final notice on July 15, 1985. Mr. Ellis did not respond.

On September 19, 1985, ATE requested Western to terminate Mr. Ellis' employment for failure to pay dues. Western notified Mr. Ellis of his termination on September 25, 1985, but due to intervening events suspended the termination pending resolution of this action.

On March 11, 1986, Mr. Ellis' counsel wrote to ATE to determine whether the union had abandoned its position.

ATE responded on March 24, 1986 that it expected Mr. Ellis to pay his delinquent dues, but that he could do so into an escrow account. In addition, ATE offered to provide Mr. Ellis with an accounting and with the right to challenge the amount of the service fee before an impartial decisionmaker. Finally, ATE asserted that Mr. Ellis had waived his right to collect a rebate on the service charges accumulating prior to this action because he had not formally objected.

On April 25, 1986, ATE's attorneys mailed Mr. Ellis a variety of financial information and suggested arranging an appointment to review personally the supporting financial documentation.

However, on April 30, 1986, Mr. Ellis refused ATE's offer, contending that it was inadequate under the Court's decision in *Ellis v. BRAC*, 466 U.S. at 438, 104 S.Ct. at 1887, and under *Chicago Teachers' Union, Local No. 1 v. Hudson*, — U.S. —, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), the Court's most recent pronouncement on the issue. *Hudson* was filed by the Court on March 4, 1986. In addition to refusing ATE's offer, Mr. Ellis filed his complaint on April 30, 1986.

On May 6, 1986, ATE answered the complaint contending that its offer was adequate under *Hudson* and that suit was premature. Four more letters were exchanged between the parties, essentially reiterating their respective positions. They are now before this court on cross motions for summary judgment.

## DISCUSSION

Fed.R.Civ.P. 56(c) authorizes the court to enter an order of summary judgment when there are no genuine issues of material fact and when the moving party is entitled to prevail as a matter of law. *See, e.g., Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir.1985). The parties to this action appear to agree that there are no genuine issues of material fact, and the court concludes that this remedy is proper.

Mr. Ellis seeks an order declaring that he is not required to pay any service charge to ATE until after the union has established a

procedure that provides the procedural safeguards explained in *Hudson*. ATE, in contrast, seeks an order compelling Mr. Ellis to pay delinquent dues and declaring that its offer of financial disclosure, of appointing an impartial decisionmaker, and of establishing an escrow account is constitutionally adequate under *Hudson*.[1]

In *Hudson*, 106 S.Ct. at 1069, the Chicago Teachers Union did not collect any dues from nonmembers until 1982. The nonmembers were fundamentally free riders. In 1982, the union established the following procedures: By reviewing financial data, the union determined that 94.6% of their expenses were directly related to collective bargaining. Accordingly, the union required nonmembers to pay 95% of the usual membership dues. In addition, the union devised a method for nonmembers to object.

The 95% service charge was automatically deducted from the nonmembers' paychecks. After deduction, the nonmember employee could file a written objection with the union president within 30 days. The objection was decided by the union Executive Council, with an ultimate right of appeal to an impartial decisionmaker who would be chosen by the union president.

Several nonmembers objected following the first deduction and, eventually, the dispute reached the Supreme Court. *Id.* The Court held in favor of the objecting union members, finding that the union's procedure had three flaws. *Id.* at 1075.

The first flaw was that the objecting nonmembers' service charge could be used for an impermissible political or ideological purpose prior to addressing the merits of the objection. The Court reiterated from its previous decisions that

> 'the Union should not be permitted to exact a service fee from nonmembers without first establishing a procedure which will avoid the risk that their funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining.' [*Quoting Abood v. Detroit Board of Education*, 431 U.S. 209, 244, 97 S.Ct. 1782, 1804, 52 L.Ed.2d 261 (1977) ].

*Id.* Thus, ATE must *first establish* a procedure to calculate an accurate service charge and to facilitate objections to it.

ATE appears to argue that such procedures are not required until an employee has objected. The union urges that it should not anticipate or speculate that any employees will object. Despite the practical logic of ATE's argument, this court reads *Hudson* contrarily.[2] Accordingly, Mr. Ellis is entitled to an order of summary judgment that he is not liable to ATE for any "service charges" until constitutionally adequate procedures for calculating and objecting to the figure are established.

The additional two flaws recited in *Hudson* concern the determination of constitutionally acceptable procedures.

---

1. As a threshold matter, ATE's Reply Brief argues that it is not bound by the procedural requirements explained in *Hudson*, 106 S.Ct. at 1066, because ATE is a private union and their alleged wrongdoing does not constitute state action. This argument is disingenuous. Unions are organized under broad federal statutes, which have been devised to establish uniformity in labor practices. Furthermore, the case that Mr. Ellis pursued against BRAC involved alleged constitutional violations against a private union organized under the Railway Labor Act. Implicitly, the Court determined that there was sufficient state action. *Ellis v. BRAC*, 466 U.S. at 438, 104 S.Ct. at 1887. In addition, this court previously determined that a nonmember employee may challenge a private union's action for alleged constitutional violations, under 42 U.S.C. § 1983, implicitly finding the necessary

state action. *Smith v. United Transportation Union Local No. 81*, 594 F.Supp. 96 (S.D.Cal. 1984). Thus, it appears that this court may exercise jurisdiction over the action pursuant to 42 U.S.C. § 1983 to determine whether the private union's actions constitute constitutional violations.

2. Mr. Ellis contends that ATE should have, in effect, presumed that he objected to the service charge because he failed to pay it and because of his activities in *Ellis v. BRAC, supra.* This court disagrees. However, because *Hudson* requires the union to first establish procedures ensuring adequate financial disclosure and a method for employees to object, plaintiff must prevail on these cross motions for summary judgment.

### 1. *Adequacy of Financial Disclosure*

In *Hudson*, the union calculated the percentage of expenses attributable to collective bargaining. Then, the union made an advance reduction of the dues, providing the employee a subsequent opportunity to object. *Id.* at 1075.

The Court found this insufficient because "it provided the nonmembers inadequate information about the basis for the proportionate share." Specifically, the Court noted that the union had informed the nonmembers of the amount spent on political and ideological causes; the union did not "identif[y] the expenditures for collective bargaining and contract administration that had been provided for the benefit of nonmembers as well as members." *Id.* at 1076.

In a footnote, the Court clarified that absolute precision is not required, and that

> the Union cannot be faulted for calculating its fee on the basis of its expenses during the preceding year. The Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure would surely include the major categories of expenses, as well as verification by an independent auditor.

*Id.* at 1076 n. 18.

In this case, ATE sent Mr. Ellis three financial documents. Exhibit K to Declaration of Robert A. Bush. First, ATE provided a summary of the expenditures that were "not necessarily and reasonably incurred for collective bargaining." It concludes that in 1983 and 1984, 3% of the union revenues were spent on political and ideological causes. One percent was spent in 1984, and none was spent on ideological causes in 1984. This summary is clearly inadequate under *Hudson*, which mandates that ATE must identify expenditures *for* collective bargaining. *Id.* at 1076.

The second document that ATE disclosed was a "statement of revenues, expenses and fund balance" for 1984. This document segregated and identified expenditures for reasonably specific categories, such as officers' salaries, election expenses, licenses and taxes.

The third document is a spread sheet showing "cash receipts and cash disbursements for January 1984." This document is the support for the "statement" described above.

The inadequacies of the second and third documents are two-fold. First, ATE merely sent these as prototypes of the documents that would be available for Mr. Ellis to review at the union's Los Angeles office. Second, ATE will only provide a review of the documents if the figures remain confidential.

This court cannot ascertain whether the appended documents are sufficient under *Hudson*. Instead, this court orders ATE to carefully review its financial data and to submit a concise yet comprehensive calculation consistent with *Hudson*. This includes, at least, "major categories of expenses [*for* collective bargaining], as well as verification by an independent auditor." *Id.* at 1076 n. 18. The supporting detailed documentation may be maintained confidentially, provided ATE ensures independent verification.

ATE may disclose this financial information within sixty days from the date of the order. It must be filed with this court and served on Mr. Ellis. Mr. Ellis may then submit specific and detailed objections to this court within ten days.

### 2. *Adequacy of Procedure for Objecting*

ATE asserts that it has complied with *Hudson* because it offered to provide financial information to Mr. Ellis and because it agreed to (1) establish an escrow account and (2) appoint an impartial decisionmaker to adjudge whether the amount of the service charge was properly computed. Significantly, however, ATE has not activated any of these proposed procedures.

ATE must actually establish its escrow account and must prepare a written explanation of its procedure for selecting an

impartial decisionmaker. The procedures must be prepared as a union policy available to all nonmember Western employees.

In addition, ATE must set forth a written procedure by which nonmembers may expeditiously challenge the amount of the fee and receive a determination by the impartial decisionmaker.

In *Hudson*, the Court summarized that the Chicago Teachers Union procedures were inadequate because

the constitutional requirements for the Union's collection of agency fees include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending.

*Id.* at 1078. *See also Gilpin v. American Federation of State, County and Municipal Employees*, 643 F.Supp. 733 (C.D.Ill. 1986); *McGlumphy v. Fraternal Order of Police*, 633 F.Supp. 1074 (N.D.Ohio 1986).

ATE must therefore fashion adequate remedies that enable Western employees (1) to object to the amount of their service charge and have the disputed amount placed in escrow, and (2) to appoint an impartial decisionmaker to ascertain whether the service charge was properly calculated. As above, ATE has sixty days to file these procedures and serve them on Mr. Ellis. Mr. Ellis may serve and file objections within ten days.

### WESTERN AIRLINES' POSITION

Western is a peripheral defendant, which only opposes the entry of a judgment that would create an affirmative obligation for it to "verify, review and/oversee that the agency fees ... do not include amounts spent for non-collective bargaining purposes." Further, Western opposes any judgment declaring that it should "take any action with regard to the Plaintiff's employment status because of his failure to pay agency fees."

Western's objections are meritorious. This Memorandum Decision and Order do not create any affirmative duty for Western.

Western may, however, be required to insert as a provision of the collective bargaining agreement the remedy that this court ultimately approves as consistent with *Hudson*.

### CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing and for the reasons set forth herein, this court hereby grants plaintiff's motion for summary judgment and denies ATE's cross motion for summary judgment. Judgment shall not be entered for plaintiff until after the parties have presented, and this court has approved, procedures for (1) ATE to calculate a service fee and disclose the financial data supporting the calculation, and (2) nonmember employees to object to the amount of the service charge, have it placed in escrow, and appoint an impartial decisionmaker. ATE must serve and file proposed procedures within sixty days. Mr. Ellis may serve and file objections within ten days. The court shall then enter judgment setting forth the appropriate remedy in detail.