Mary A. HOHE, et al., Plaintiffs,

v.

Robert P. CASEY, Governor, et al., Defendants.

Civ. A. No. 88–1348.

United States District Court, M.D. Pennsylvania,

Aug. 10, 1989.

Thomas A. Beckley, Harrisburg, Pa., Charles O. Beckley, Harrisburg, Pa., Milton L. Chappell, Raymond J. LaJeunesse, Glenn M. Taubman, National Right to Work Legal Defense Found., Inc., Springfield, Va., John G. Milakovic, Beckley & Madden, Harrisburg, Pa., for plaintiffs.

Joseph S. Sabadish, Thomas Brian York, Office of the Atty. Gen., Chief, Litigation Section, Harrisburg, Pa.

Elaine Williams, Kirschner, Walters & Willig, Philadelphia, Pa., John J. Sullivan, Richard Kirschner, Kirschner, Weinberg & Dempsey, Washington, D.C., for defendants.

Peter D. Walther, Regina C. Reardon, A. Taylor Williams, Bray, Walther & Reardon, Philadelphia, Pa., for Robert J. Bray.

MEMORANDUM

CALDWELL, District Judge.

*Introduction*

In this class action, the plaintiffs challenge the constitutionality of Section 2 of Pennsylvania Act No. 84 of 1988, which amended the Pennsylvania Administrative Code of 1929, 71 P.S. §§ 51 to 732–506 (Purdon 1962 and Supp.1989), the collective bargaining agreement executed pursuant thereto, and the procedure implemented by AFSCME Council 13 under the agreement. Now before the court and ripe for disposition are the plaintiffs' motion for partial summary judgment, the union's motion for summary judgment, and the Commonwealth defendants' motion for judgment on the pleadings. Because they contain many of the same issues, we will consider and discuss them together.

*Background*

Since July 13, 1988, Act 84 has authorized labor unions to bargain for and collect a "fair share fee" from certain non-union commonwealth employees. 71 P.S. § 575(b). The purpose of the fee is to offset the cost of collective bargaining on behalf of the nonmembers. The Act defines "fair share fee" as the regular membership dues required of members less the cost for the previous fiscal year of the union's non-collective-bargaining-related activities. 71 P.S. § 575(a). It requires as a precondition to fee collection that the union "establish and maintain a full and fair procedure, consistent with constitutional requirements, that provides nonmembers ... with sufficient information to judge the propriety of the fee and that responds to challenges by nonmembers to the amount of the fee." 71 P.S. § 575(d). The union must establish arbitration procedures to resolve the challenges, *id.*, which arbitration is final and binding. 71 P.S. § 575(g). When a challenge is made, the union is required to place 50% of the fee into an interest-bearing escrow account until the challenge is resolved by the arbitrator. 71 P.S. § 575(i).

On July 28, 1988, AFSCME Council 13 and the Commonwealth amended their collective bargaining agreement to provide for the withholding of fair share fees from the earnings of non-union employees represented by Council 13 for collective bargaining purposes. Council 13 identified some 18,000 such workers from Commonwealth payroll records and determined the amount of their fees to be 88.55% of its members' regular dues or 1.33% of their base salaries. The union then informed the Commonwealth of the names and amounts to be withheld.

Between August 8 and 12, 1988, Council 13 sent to the potential fee payers a notice explaining how the fair share fee was calculated. The notice lists the union's expenses, broken down by major expense category, for the fiscal year that ended on June 30, 1987. Each category contains an allocation of chargeable and nonchargeable expenses. Also included is a description of what expenses the union considers to be chargeable and nonchargeable. The notice advises the fee payers of their rights to challenge the fee within 45 days, and informs them that 100% of the disputed fee will be placed into escrow pending the outcome of arbitration.

On August 16, 1988, the Commonwealth began deducting the fees. Pursuant to the collective bargaining agreement, the Commonwealth is to remit to Council 13 dues and fair share fees withheld in one month by the end of the following month.

On August 26, 1988, the 15 named plaintiffs, nonunion Commonwealth employees who work in bargaining units represented by AFSCME Council 13, filed this lawsuit on behalf of themselves and all others similarly situated. Their complaint alleges that the union and the Commonwealth have violated and continue to violate their first and fourteenth amendment rights by exacting the fair share fees. They claim that Act 84 is unconstitutional, both on its face and as applied in this case, and that the defendants' scheme for collecting compulsory fees from nonconsenting nonmembers fails to meet the constitutional requirements enunciated in *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Pending reso-

lution of this matter, Council 13 has escrowed all of the fees withheld from all fair share fees payers, whether they have objected or not.

Approximately 500 nonmembers have submitted challenges to the fees by following the statutorily prescribed procedures. On January 18, 1989, an arbitrator appointed by the American Arbitration Association upheld the union's determination of chargeable expenses and its calculation of the fees.

*Discussion*

■ It is beyond doubt that agency shop fair share fees, accompanied by appropriate procedural safeguards, are constitutional. *Hudson; Ellis v. Railway Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984); *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). In this case, the court simply must examine the safeguards mandated by Act 84 and implemented by the defendants, and determine whether they satisfy the constitutional requirements set forth in *Hudson*. As explained below, we conclude that the defendants have complied with all aspects of *Hudson* except its verification requirement. With respect to that question, the existence of a factual issue precludes a decision at this time.

Many of the issues raised in the plaintiffs' request for a preliminary injunction, have been reargued in the current motions. Therefore much of what we write now reiterates what was said in denying that motion. *See Hohe v. Casey*, 695 F.Supp. 814 (3d Cir.1988), *aff'd* 868 F.2d 69 (3d Cir. 1989). We again emphasize that the questions to be decided are narrow, and, for the most part, technical. Though we are aware of and understand the plaintiffs' philosophical objections to fair share fee programs, those matters are not before the court. We shall not, as the plaintiffs would like, indulge in an analysis of the advisability of such programs on social or political grounds. The General Assembly,

rightly or wrongly, has spoken, and the union has availed itself of the benefits of the law. Absent a constitutional infirmity, we are without the authority to satisfy the plaintiffs. They must turn, instead, to the legislature for relief.

We preface our discussion of the several motions under consideration with these remarks because a significant number of the plaintiffs' arguments appear to be directed not at whether the *Hudson* requirements have been met, but rather at whether fair share fee programs should be subject to more stringent requirements. We will neither consider nor discuss those arguments. In addition, the plaintiffs continually emphasize only the first amendment component of the *Hudson* decision. Though we agree that the plaintiffs' first amendment rights are indeed worthy of protection, we must weigh those rights against the union's rights, as did the Supreme Court in *Hudson*.[1]

■ The *Hudson* Court held that fair share fee programs must "minimize the risk that nonunion employee's contributions might be used for impermissible purposes." *Hudson*, 475 U.S. at 309, 106 S.Ct. at 1077, 89 L.Ed.2d at 248.

> "[T]he objective must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." *Abood*, 431 U.S., at 237, 97 S.Ct. at 1800.

Procedural safeguards are necessary to achieve this objective for two reasons. First, although the government interest in labor peace is strong enough to support an "agency shop" notwithstanding its limited infringement on nonunion employees' constitutional rights, the fact that those rights are protected by the First Amendment requires that the procedure be carefully tailored to minimize the infringement. Second, the nonunion

---

1. We will confine our discussion to the plaintiffs' first amendment concerns because "in this context, the procedures required by the First Amendment also provide the protections necessary for any deprivation of property." *Hudson*, 475 U.S. at 304 n. 13, 106 S.Ct. at 1075 n. 13, 89 L.Ed.2d at 245 n. 13.

employee—the individual whose First Amendment rights are being affected—must have a fair opportunity to identify the impact of the governmental action on his interests and to assert a meritorious First Amendment claim.

*Id.* at 302–03, 106 S.Ct. at 1074, 89 L.Ed.2d at 244–45 (footnotes omitted). The required safeguards include "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." *Id.* at 310, 106 S.Ct. at 1078, 89 L.Ed.2d at 249. With those principles in mind, we turn to the plaintiffs' claims that because it does not minimize the risk of excessive collections or the burden of objection, the fair share scheme at issue here fails to satisfy the constitutional requirements of *Hudson.*

### A. Timeliness of the Notice

■ Citing *Damiano v. Matish*, 830 F.2d 1363 (6th Cir.1987), *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987), *Gilpin v. AFSCME*, 643 F.Supp. 733 (C.D.Ill.1986), and *Lehnert v. Ferris Faculty Ass'n*, 643 F.Supp. 1306 (W.D.Mich.1986), the plaintiffs assert that notice of the fee deductions was untimely. They claim that *Hudson* requires notice to all potential fee payers before any fees may be collected.

Under the facts of this case, the timeliness of the notice is not genuinely at issue. It is undisputed that it was mailed four to eight days before deductions began. Furthermore, the plaintiffs concede that the union did not obtain any fees until after the deadline for filing challenges had passed. *See* Plaintiffs' Brief in Opposition to AFSCME's Motion for Summary Judgment at 32. Once a challenge was filed, the disputed fee was escrowed. Thus, the union did not have the use of the dissenters' funds for objectionable purposes, even temporarily. Nevertheless, the plaintiffs argue that in future years the union *could* receive and spend fees before challenges are filed and it is obligated to escrow the challengers' fees. We will not consider that argument, which is founded purely on speculation. We decline to establish an arbitrary length for either the notice period or the objection period. We do hold, however, that the 45 day period that existed in this case between the notice and the union's receipt of the fees satisfied *Hudson*. *See Lehnert* (two week period for objections sufficient).[2]

### B. Local Union Presumption

■ The plaintiffs continue to challenge the use in the notice of the presumption that the chargeable expenditures of Council 13's more than 300 affiliated local unions are at least as great, on a percentage basis, as Council 13's expenditures. Though a difficult question, we continue to believe that the use of the presumption is permissible in this case, and we have little more to add to what was said in our September 15, 1988, opinion.

The parties' dispute can be reduced to their fundamental disagreement as to the purpose of the notice. The plaintiffs contend that it must serve as predeprivation justification for the collection of the fees and as proof that the fee amounts are correct. The defendants posit that its purpose merely is to disclose how the fee was calculated, thereby allowing nonmembers to object to the calculation, including the use of the presumption. We believe the defendants are correct. So long as the calculation of the fee is explained in the notice, and the fee payer is able to make a general challenge to the fee, the *Hudson*, requirements are satisfied. We see no reason to force the union to provide, and potential fee payers to examine, over 300 additional disclosure statements, each as

2. We emphasize to the plaintiffs that our decision is made strictly on the basis of constitutional requirements. We do not wish to be interpreted as approving the apparently hasty fashion in which the union and Commonwealth amended their collective bargaining agreement and instituted the fair share fee program. We are aware of the beliefs of some that the program was instituted in return for organized labor's support of certain political candidates. We express no opinion as to that view and such concerns can play no role in our consideration of the issues before us.

detailed as the original notice. We think that as a practical matter Council 13's notice provides more meaningful data than would the substantially longer and more complicated notice advocated by the plaintiffs.

Finally, the plaintiffs challenge the factual reliability of the presumption and claim that its inaccuracy renders the notice defective. We reject that argument. The salient factor is that the union's reliance on the presumption is disclosed and is subject to review by the arbitrator. Any defect in the presumption can be cured at that time. If the presumption is not grounded in fact, Council 13 will be unable to carry its burden of justifying the fee, and the challengers will not be charged for any portion of its local union expenditures.[3]

### C. *Verification of the Notice*

■ *Hudson* requires that a fair share fee notice "include the major categories of expenses, as well as verification by an independent auditor." *Hudson,* 475 U.S. at 307 n. 18, 106 S.Ct. at 1076, 89 L.Ed.2d at 247 n. 18. The plaintiffs challenge Council 13's notice on the grounds that on its face it includes no independent verification and that an independent auditor did not verify the union's calculation of the fee.

On its face, the notice purports to be verified and thus we reject the first ground. The second ground gives us reason to pause, however. The plaintiffs argue that according to the deposition of Harvey Nuland, a CPA whose accounting firm was responsible for the audit, the accuracy of AFSCME International's expense figures were not verified. We have read Nuland's deposition and do in fact find testimony to that effect. *See* Nuland deposition at 42–43. However, we do not find his testimony, read in its entirety, to be clear enough to reach the conclusion urged by the plaintiffs. From his answers in other parts, it appears that those figures may have been examined, but the extent of the examination is unclear. We think the deposition is confusing enough to warrant

the denial of both the union's and the plaintiffs' motions for summary judgment on this point. To further muddy the waters, in an affidavit filed one month after his deposition, Nuland avers that his firm conducted the annual audit of AFSCME International's financial statements. We are uncertain whether that statement contradicts or merely explains his earlier testimony.

### D. *Standard for Chargeable Costs/Advance Reduction*

■ The plaintiffs argue that Act 84 and Council 13's notice and procedures incorporate a constitutionally overbroad standard for chargeable costs. In denying the plaintiffs' request for a preliminary injunction, we refused to consider those objections because they raise substantive challenges to the amounts of the fees. Likewise, we will not do so here. Under *Hudson,* the fact that the amount of a fee may be excessive does not amount to a first amendment violation so long as the fee is reviewable by an arbitrator. Now, the plaintiffs have approached this question from a different angle. They do not claim that the issue here is whether the union has correctly allocated expenses as a matter of fact. Rather they challenge on legal grounds the standards established by Act 84 and the union procedure implementing those standards.

First, the plaintiffs assert that the standard for calculating fair share fees under Act 84 does not properly define chargeable expenses. The Act authorizes a fee equal to "the regular membership dues required of members of the exclusive representative less the cost for the previous fiscal year of its activities or undertakings which were not reasonably employed to implement or effectuate the duties of the employe organization as exclusive representative." 71 P.S. § 575(a). The plaintiffs claim that this method of determining fees is contrary to that required by *Hudson.* They contend that rather than subtracting nonchargeable expenses from total expenses, with the remainder being chargeable, the union must

---

**3.** We note that, in this case, the arbitrator recently has upheld the presumption. The review

of that decision is not a matter now before the court.

add all chargeable expenses. The plaintiffs' argument is frivolous and illogical. Regardless of the method used, the amount of chargeable expenses will be the same.

The plaintiffs incorrectly rely upon the following language in *Hudson* as supportive of their argument: "An acknowledgment that nonmembers would not be required to pay any part of 5% of the Union's total annual expenditures was not an adequate disclosure of the reasons why they were required to pay their share of 95%." *Hudson,* 475 U.S. at 307, 106 S.Ct. at 1076, 89 L.Ed.2d at 247. At that point in the opinion, the Court was not discussing the method used to calculate the fee, but rather the method used to explain the fee. The Court simply held that it was not sufficient for a union notice to explain the advance reduction of dues only by identifying nonchargeable expenses and leaving the nonmembers to speculate as to what constituted chargeable expenses. In this case, the notice lists both chargeable and nonchargeable costs. Thus the issue that was before the *Hudson* court does not arise.

■ Next, the plaintiffs claim that the amount of each individual nonmember's fees is unconstitutionally arbitrary since it is based on a percentage of gross income. They argue that such uneven apportionment gives an employee who pays a lower fee a partial free ride at the expense of those who pay higher fees. We reject that argument. The assessment of dues and fees on the basis of an employee's salary is a long-standing practice. In *Aluminum Workers Council,* 185 NLRB 69 (1970), the National Labor Relations Board, in deciding a case under the National Labor Relations Act,[4] wrote:

[A] labor organization ... may lawfully charge, as a condition of acquiring or retaining membership, different rates for initiation fees and dues provided that they are based on a reasonable general classification; that is, one that is not discriminatory. Thus dues based on the

employees' earnings have been held to be not discriminatory.

*Id.* at 70, *quoted in Bagnall v. Airline Pilots Assn.,* 626 F.2d 336, 339 (4th Cir. 1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981). In *Klemens v. Airline Pilots Ass'n,* 736 F.2d 491 (9th Cir.1984), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 435, 83 L.Ed.2d 362 (1984), and *Bagnall,* cases brought under the Railway Labor Act, the courts rejected similar claims. The *Bagnall* court wrote:

The assessment of dues based upon a percentage of earnings is, we think, a reasonable classification. Considering either his economic ability to pay or the benefits he realizes from effective representation, a pilot earning greater income has an advantage over a pilot earning less; there are reasons why he should or could pay more. There is uniformity in the basis of computing dues and there is lack of any indication of discrimination.

*Bagnall,* 626 F.2d at 339–40. We agree with that reasoning. Because the Council 13 fair share fee is based upon a reasonable, nondiscriminatory classification, it is not unconstitutionally arbitrary.

E. *Facial Challenges to Act 84*

The plaintiffs contend that Act 84 is unconstitutional on its face in four regards: 1) its definition of fair share fees is overbroad; 2) it requires fee deductions regardless of whether the necessary procedural safeguards are established; 3) it authorizes an escrow of only 50% of the challenged fees; and 4) it purports to deny nonmembers access to the courts. We have already considered the adequacy of the Act's definition of fair share fees and have concluded that it is not constitutionally deficient. We will say no more on that issue.

In considering the remaining arguments, we are guided by the Third Circuit's opinion in *Robinson v. State of New Jersey,* 806 F.2d 442 (3d Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987). In reviewing the New Jersey agen

---

**4.** The National Labor Relations Act prescribes a test of "uniformity" with respect to the assess

ment of union dues.

cy shop law for facial invalidity, the court wrote:

It is well established that the courts will not invalidate a statute on its face simply because it *may* be applied unconstitutionally, but only if it *cannot* be applied consistently with the Constitution. Thus in *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), the Supreme Court explained that there are two different contexts in which a statute may be declared facially invalid: "either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.' " *Id.* at 796, 104 S.Ct. at 2124. A holding that invalidates a statute in the first situation "expresses the conclusion that the statute could never be applied in a valid manner." *Id.* at 797–98, 104 S.Ct. at 2125. The New Jersey Act clearly does not fall into this category. It does not mandate procedures that result in a union enjoying temporary use of funds to which it is not entitled; it does not forbid a union to provide nonmembers with a justification of its fee assessments; and it does not prevent the establishment of an adequate appeal procedure.

*Id.* at 446–47. We can say the same of the Pennsylvania Act.

The plaintiffs claim, however, that their facial attacks are aimed not at the Act as a whole, but at specific severable provisions. A reading of those provisions reveals that our rulings on their constitutionality would have no bearing on the outcome of this case. Thus to invalidate those provisions would be improvident. As the Supreme Court wrote in *Brockett v. Spokane Arcades Inc.*, 472 U.S. 491, 501–02, 105 S.Ct. 2794, 2800–01, 86 L.Ed.2d 394, 404–05 (1985):

We call to mind two of the cardinal rules governing the federal courts: " '[o]ne, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than

is required by the precise facts to which it is to be applied.' " *United States v. Raines*, 362 US 17, 21, 4 L Ed 2d 524, 80 S Ct 519 (1960), quoting *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration*, 113 US 33, 39, 28 L Ed 899, 5 S Ct 352 (1885). Citing a long line of cases, Raines also held that "[k]indred to these rules is the rule that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." These guideposts are at the bottom of the "elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected." *Allen v. Louisiana*, 103 US 80, 83–84, 26 L Ed 318 (1881), quoted with approval in *Field v. Clark*, 143 US 649, 695–696, 36 L Ed 294, 12 S Ct 495 [505] (1892).

.        .        .        .        .

Nor does the First Amendment involvement in this case render inapplicable the rule that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it.

We will explain briefly why we need not invalidate the challenged provisions in order to dispose of this case.

As the plaintiffs argue, it appears that 71 P.S. § 575(d) requires the Commonwealth to withhold fees from the plaintiffs and remit them to the union, even if the necessary procedural safeguards have not been implemented. They claim that that provision violates *Hudson* which they contend requires the Commonwealth to examine the union procedure and satisfy itself that it is constitutionally sound before it deducts fees from its employees' paychecks. The soundness of the union's procedure is the central issue in this case. With the exception of the verification re-

quirement yet to be determined, we have already found that the required safeguards have been implemented. If it is later determined that the audit was proper, the plan passes muster and the fact that the Commonwealth may not have ensured its constitutionality is irrelevant. If the audit is found to have been improper, the union's procedure was constitutionally defective and the plaintiffs will prevail. The fact that the Commonwealth might not have earlier barred fee collection would not make the plaintiffs more victorious. Thus, under the facts of this case it is unnecessary to consider the plaintiffs' challenge to section 575(d).[5]

Similarly, the plaintiffs' challenge to the Act's escrow provision is rendered moot by the facts of this case and need not be considered. 71 P.S. § 575(i) provides that when a challenge is made to the propriety of the fair share fee, the union shall escrow 50% of the challenged fee until the challenge is resolved by arbitration. The plaintiffs appear to attack that section on two grounds: first, that *Hudson* requires a 100% escrow; and second, that 50% is arbitrary. Here, the union has escrowed 100% of all challenged fees, which clearly complies with any such condition *Hudson* might mandate.[6] Therefore the striking down of section 575(i) gains the plaintiffs nothing. Furthermore, as we noted above, a statute may be found to be unconstitutional on its face only if it cannot be applied consistently with the constitution. In this case, the escrow provision has been so applied, apparently by construing section 575(i) as requiring *at least* a 50% escrow.

Finally, the plaintiffs attack, as facially defective, 71 P.S. § 575(g), which provides that when the propriety of a fair share fee is challenged, the "decision of the impartial arbitrator shall be final and binding." They claim that that language unconstitutionally hinders "the access of nonmembers to the courts for the vindication of the first

amendment right not to subsidize more than the costs of statutory exclusive representation" by discouraging suits. Plaintiffs' brief in support of motion for partial summary judgment at 34. Clearly, section 575(g) did not deter the plaintiffs from filing this action. A finding that it might impede some future plaintiff's access to the courts would have no bearing on the outcome of this litigation.

*Conclusion*

As indicated in the foregoing discussion, we believe that Act 84 can be applied constitutionally, and that for the most part, the fair share fee deduction program implemented by AFSCME Council 13 comports with the requirements of *Hudson*. Accordingly, the plaintiffs' motion for partial summary judgment will be denied. We must also deny the Commonwealth's motion for judgment on the pleadings and the union's motion for summary judgment because of the existence of a genuine issue of material fact: whether the financial data concerning AFSCME International has been properly verified. The resolution of that question is the sole issue remaining in this matter.

---

5. For the same reasons we also reach that conclusion with respect to the indemnification clause in the collective bargaining agreement.

6. The *Hudson* Court wrote that it "need not hold that a 100% escrow is constitutionally required. Such a remedy has the serious defect of depriving the Union of access to some escrowed funds

that it is unquestionably entitled to retain." *Hudson,* 475 U.S. at 310, 106 S.Ct. at 1079, 89 L.Ed.2d at 249. All that is required is an "escrow for the amounts reasonably in dispute," with the proviso that if less than 100% is escrowed, the union must justify the limited escrow. *Id.*