**William LUCID, et al., Plaintiffs,**

v.

**CITY AND COUNTY OF SAN FRANCISCO, et al., Defendants.**

**No. C90–3240 TEH.**

United States District Court, N.D. California.

July 17, 1991.

A. Roger Jeanson, Berman, Berkley & Lasky, San Francisco, Cal., for plaintiffs William Lucid, Gary Del Fante, Joseph Figone, Richard W. Fay, Joseph Moalen, Charles A. Searle, John J. Flower and Johnson Chow.

Jonathan V. Holtzman, Louise H. Renne, Camille Hamilton, San Francisco City Attorney's Office, San Francisco, Cal., for defendant City and County of San Francisco.

Magdalena Jacobsen, San Francisco, Cal., for defendants.

Albert Brundage, United Ass'n of Plumbers, Local 38, San Francisco, Cal., for defendant United Ass'n of Journeymen & Apprentice, Local Union 38.

## ORDER

THELTON E. HENDERSON, Chief Judge.

This matter came before the Court on July 15, 1991, on plaintiffs' motion for summary judgment and defendant's cross-motion to dissolve the preliminary injunction. Having carefully considered the parties' written and oral arguments, the Court defers ruling on both motions and directs the parties to proceed as set forth below.

BACKGROUND

The background to this litigation has been set forth in this Court's January 18, 1991 Order granting a preliminary injunction and will not be recited here. The issue presented by these cross-motions is whether the defendant union [1] (Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local Union No. 38) (hereafter "Local 38" or "Union") has established procedures for initiating

---

1. The City and County of San Francisco has settled with plaintiffs. Thus, the Union is the only remaining defendant.

collection of agency fees from non-union members that comport with the constitutional requirements set forth in *Lehnert v. Ferris Faculty Ass'n*, —— U.S. ——, ——, 111 S.Ct. 1950, 1960–61, 114 L.Ed.2d 572 (1991), *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), and *Grunwald v. San Bernadino Unified City School Distr.*, 917 F.2d 1223 (9th Cir.1990).

■ Under the above authority, unions may initiate collection of agency fees from non-members, consistent with the first amendment, if the following requirements are satisfied:

1. The union must provide non-members with an audited financial statement that identifies the major categories of expenses, and divides them into chargeable and non-chargeable expenses,

2. The union must provide non-members with an opportunity to object to the amount of the agency fee sought, and any amount reasonably in dispute must be escrowed, and

3. Prompt arbitration must be provided to resolve any objection over the amount of the agency fee.

On January 18, 1991, we ruled that the disclosure made to plaintiffs was constitutionally inadequate in several respects and preliminarily enjoined defendants, pending trial or further order of the Court, from (1) taking any action aimed at collecting agency fees from plaintiffs, and (2) proceeding with an arbitration to resolve the dispute.

On May 20, 1991, plaintiffs filed the instant motion for summary judgment seeking a permanent injunction against any efforts to collect agency fees from plaintiffs until Local 38 establishes constitutionally adequate procedures. Plaintiffs also seek nominal damages and an award of punitive damages in the amount of $1,000 per plaintiff.

On June 4, 1991, Local 38 engaged an accounting firm Miller, Kaplan, Arase & Co. ("MKA") familiar with these matters to prepare a financial statement that would comply with the requirements set forth above and our preliminary injunction order. On June 17, Local 38 filed its opposition to plaintiffs' summary judgment motion along with a cross-motion to dissolve the preliminary injunction, based on the new MKA financial statement for the year ending December 31, 1990.

Consequently, both plaintiffs' summary judgment motion and Local 38's cross-motion turn primarily on the adequacy of the new MKA financial statement. Plaintiffs argue that the MKA statement is also inadequate and that summary judgment should therefore still be granted. Local 38 contends that the MKA statement is sufficient and therefore the preliminary injunction should be dissolved and the summary judgment motion denied. Plaintiffs also raise two subsidiary issues in the event we find the MKA statement adequate: (a) whether they can be retroactively assessed agency fees, and (b) whether plaintiffs have been provided sufficient notice concerning their right to object to the agency fee and have such objection resolved by arbitration.[2]

## DISCUSSION

### A. *Adequacy of the MKA Schedule*

The MKA financial statement consists of an audited "schedule of chargeable and nonchargeable expenses" for Local 38 for the year January 1, 1990 to December 31, 1990. It breaks down the Union's expenses into 27 different categories and determines what percentage is "chargeable" and what percentage is "non chargeable" based on criteria set forth in the "Notes" attached to the schedule. The combined chargeable expenses for all 27 categories constitute 78.9% of total expenses. Based on this percentage, the Union calculated the agency fee for non-members to be $45.10 (78.9%

**2.** Plaintiffs also raise the issue whether the Union violated the preliminary injunction because their June 17, 1991 letter to plaintiffs constituted "action aimed at collecting fees." *See* January 18, 1991 Order at 12. To the extent plaintiffs are seeking a finding of contempt, the prop-

er context is a motion for contempt, not a motion for summary judgment on the merits. In any event, the Court does not believe this is an appropriate circumstance for a finding of contempt; however, the Union is warned that all orders must be carefully heeded.

of the union member fee). *See* Mazzola Decl., Exh. 17.

■ Plaintiffs first suggest that the MKA statement should be rejected as inadequate because MKA did not audit the Union's expenses itself. Rather, it relied on another auditor's report prepared by Deloitte & Touche to determine the Union's expenses. However, there is no requirement that one accounting firm complete all components of the auditing process. Thus, this objection is meritless.

■ Next, plaintiffs contend that a discrepancy between the MKA statement and the Deloitte & Touche statement casts doubt on the overall reliability of the MKA statement. Specifically, the MKA statement lists the total expenses of the Union as being 1.46 million, while the Deloitte & Touche report shows total expenditures as being 1.875 million. However, an accountant at MKA explains that the difference arises because the Deloitte & Touche figure does not represent the same item as the MKA figure, which included "reimbursement offsetting." We conclude that the discrepancy has been adequately explained. *See* Holmer Decl. We also note that plaintiffs appeared to abandon this issue at oral argument.

More fundamentally, it is not the Court's function to analyze the financial statement for accounting errors. Such an approach would require the court to pass on the competency of the accountant and the accuracy of the statement, a role which Courts are not only ill-suited to perform, but which goes far beyond that contemplated by *Hudson*. Rather, any quarrels regarding such matters may be addressed more appropriately in the context of arbitration if the chargeable amount is disputed.

■ Third, plaintiffs complain that the MKA schedule is deficient under *Lehnert* because it fails to break down the expenses incurred on a bargaining unit basis. While plaintiffs are public employees, most of the employees covered by Local 38 work in the private sector in other bargaining units. Plaintiffs contend that the Court should require the Union to specify which expenses relate to their particular bargaining unit and which relate to the private bargaining units.

No authority requires such a breakdown and we decline to extend existing law to create one. Requiring such a breakdown may be extremely impracticable, if not impossible, as well as unduly burdensome. Moreover, the Supreme Court recently held that non-members can be charged for their prorata share of costs associated with otherwise chargeable activities of state and national affiliates, even if those activities were not performed for the "direct benefit" of the objecting employees' bargaining unit. *Lehnert*, 111 S.Ct. at 1961. In so holding, the Court rejected the proposition that non-members may be charged only for those activities undertaken directly on behalf of their own bargaining units. *Id.* Such an approach, the Court noted, would "ignore the unified-membership structure under which many unions, including those here, operate." *Id.*

*Lehnert* does state that there must be "some indication that the payment [to the National or State affiliates] is for services that may ultimately enure to the benefit of the members of the local union by virtue of their membership on the parent organization.... [however], the union need not demonstrate a direct and tangible impact upon the dissenting employee's unit." *Id.* at 1961–62. Plaintiffs urge us to construe this language to impose upon Local 38 a burden to show that any expenses incurred in connection with the private sector bargaining units (that are charged to plaintiffs) are only for activities that "ultimately enure to the benefit" of employees in the public sector units. Pls' Oppo. at 12. However, this language does not specifically impose such a burden since it only concerned the chargeability of state and national affiliation costs to local non-members.

Moreover, even assuming the "some indication of ultimate benefit" test should be expanded to the instant situation, we conclude that Local 38 has made an adequate showing. According to Lawrence Mazzola (Business Manager–Financial Secretary

Treasurer of Local 38), the agreements with the private sector units require the employers to fund an apprenticeship and supplemental apprenticeship program which is available to Local 38 (and in which certain of the plaintiffs have participated). Mazzola Suppl.Decl. at ¶ 2–3. In addition, the pay scales for the public employees are largely influenced by the wage rates negotiated by Local 38 in the private sector. *Id.* at ¶ 3. Thus, Local 38 has shown "some indication" that expenses relating to the private sector bargaining unit "may ultimately enure to the benefit" of the members of the public sector unit.

■ Finally, plaintiffs contend that MKA used an overly broad definition for what constitutes a "chargeable expense." The MKA report defines chargeable expenses to include, *inter alia*, (1) the costs of "communications with community organizations, civic groups, government agencies and the media respecting the Local's position on **work-related matters**," and (2) lobbying and legislative activities with respect to matters concerning employees' **work-related issues**." Mazzola Decl. Exh 17 (emph. added).

In *Lehnert,* the Supreme Court acknowledged that the line between bargaining-related and ideological activities becomes "somewhat hazier" when public sector unions are involved, given that representing public sector employees requires unions to " 'necessarily concern themselves not only with negotiations at the bargaining table but also with advancing their members' interests in legislative and other "political" arenas.' " *Lehnert,* 111 S.Ct. at 1959 (quoting the appellate decision at 881 F.2d 1388 at 1392, 6th Cir.1989).

The Supreme Court nevertheless drew a line between lobbying activities that relate to the "ratification" or "implementation" of a collective bargaining agreement and lobbying activities designed to gain financial support of the employee's profession or of public employees generally. The former is chargeable; the latter is not. *Id.* — at ——–——, 111 S.Ct. at 1959–61. ("Accordingly, we hold that the State constitutionally may not compel its employees to subsidize legislative lobbying or other political union activities outside the limited context of contract ratification or implementation").[3]

Given this test, the above quoted components of the definition of chargeable activities used by MKA appear overbroad since they count as chargeable any lobbying and public relations activity that concerns "work related matters" or "work related issues." On their face, these two phrases could easily encompass matter or issues beyond those concerning contract ratification and implementation. *Cf; Lehnert v. Ferris Faculty Ass'n,* 707 F.Supp. 1473, 1482 (W.D.Mich.1988), *aff'd in part and reversed in part,* — U.S. ——, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991).[4]

## B.  *Retroactivity and Notice*

As noted above, plaintiffs also contend that, even if the MKA statement comports with first amendment requirements, we should rule that (1) Local 38 can not retroactively assess agency fees, and (2) that Local 38 failed to provide sufficient notice to plaintiffs concerning their right to object to the $45.10 agency fee and have such objection resolved by arbitration.

---

**3.** Similarly, "public-relations" expenditures (such as information picketing, media exposure, signs, posters and buttons) must also be sufficiently related to the union's collective bargaining functions of negotiation and grievance-resolution before they are chargeable to non-members.

**4.** Plaintiffs also suggest that certain specific items were improperly categorized by the auditors. However, it is not this Court's role to determine if every little item was properly categorized as chargeable or non chargeable. Rather, the Court's function is to ensure that the

Union provides an audited breakdown of the major categories into chargeable and non chargeable expenses according to the general principles outlined in the relevant cases. If this is done but the plaintiffs disagree with the auditor's application of these principles, and believe that the amounts categorized as chargeable are excessive, then they may object and arbitrate any such disputes. However, this Court will *not* be drawn into this micro-level of dispute resolution; it is neither appropriate given the function of the arbitration nor a wise use of federal judicial resources.

### 1. Retroactive assessment

■ When Local 38 provided plaintiffs with a copy of MKA's schedule for the year end 1990, it was accompanied by a letter, dated June 17, 1991, which states that MKA has determined that the proper agency fee for plaintiffs is $45.10 per month (based on a 78.9% chargeability ratio) and that "[t]his amount is to be retroactive to July 1, 1989." Mazzola Decl., Exh. 16. Plaintiffs object that the Union's attempt to collect on a retroactive basis is improper.

While neither party points to any authority on point, the clear thrust of the cases cited above is that non-members must be given constitutionally adequate disclosures, and an opportunity to object *before* the union attempts to collect an agency fee from non-members. Retroactive assessment would be contrary to this consistent theme. *See e.g., Grunwald,* 917 F.2d at 1228; *Tierney,* 824 F.2d at 1503. It would also provide little incentive for unions to bring their procedures into compliance with constitutional standards, since they could always collect agency fees retroactively at any point. Further, the fact that the union undertakes a constitutionally adequate audit for the most recent year does not mean that the chargeable ratio for the most recent year would have been the same for previous years. Accordingly, we conclude that the union may not recover agency fees retroactively.

### 2. Notice

■ The June 17, 1991, letter referred to above simply states that $45.10 is the amount due per month and requests that plaintiffs contact the Dues Office so that the matter may be finalized. It does not mention any right to object or to arbitrate any objection. Local 38 argues that this failure should be of no consequence because plaintiffs can identify no resulting prejudice. Plaintiffs must know, the Union contends, of their right to object and arbitrate given the history of this litigation.

Again, neither party directs the Court to any authority on point. However, we conclude that the absence of prejudice is not dispositive. The purpose of this lawsuit is to force the Union to develop constitutionally adequate procedures for collection of agency fees from plaintiffs. Such procedure must include the opportunity to object and to arbitrate any disputes, and have disputed funds placed in escrow in the meantime.

If this procedure is to have any meaning, the union must notify plaintiffs of these options when informing them of the amount of the agency fee and providing the supporting audits. The Union appears to concede as much by arguing that their failure to provide such notice caused no prejudice rather than arguing that no such notice was required at all. As there is no "lack of prejudice" exception to compliance with the constitutional requirements, we conclude that the Union should be required to inform plaintiffs of their rights concerning objecting to and arbitrating any disputes. *Hudson, supra; Grunwald, supra.*[5]

Moreover, even assuming plaintiffs are aware of their right to object, the Union has failed to inform them of how or where such objection should be lodged and by what date it must be lodged. *See, Tierney v. City of Toledo,* 824 F.2d 1497, 1506 (6th Cir.1987) ("a non-union member reading the rules simply would not know how to make a prompt and effective objection").

## C. *Damages*

■ As noted above, in addition to the injunctive relief sought, plaintiffs seek nominal damages and punitive damages (in the amount of $1,000/plaintiff). Local 38 does not object to the request for nominal damages, but argues that punitive damages are not warranted.

---

**5.** In *Grunwald,* the Court described, in part, the procedure provided for as follows: "SBTA's agency fee collection procedure set out specific steps for objection fee payers to follow to receive a rebate. The procedure requires a fee payer to send a letter to the SBTA indicating that the fee payer objects to his fee being spent on nonchargeable activities and requesting a rebate." 917 F.2d at 1229.

The test for punitive damages in cases brought under 42 U.S.C. § 1983 is whether the defendant's conduct is shown to have been motivated by an evil motive or intent or a reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Plaintiffs contend that the Union persistently refused to undertake the necessary audit, and harassed plaintiffs concerning payment of the fee, including threatening termination, and that such conduct constitutes at least reckless or callous indifference to their first amendment rights. The Union contends that it has acted in good faith all along. At this juncture, neither party has persuaded the Court that the matter is resolvable on summary judgment.

CONCLUSION

The only issue remaining with respect to the adequacy of the Union's disclosure concerns the two components of the chargeability definition discussed above.

Accordingly, and good cause appearing, it is HEREBY ORDERED as follows:

1. Ruling on plaintiffs' motion for summary judgment and Local 38's cross-motion for dissolution of the preliminary injunction is deferred pending the following. Within 14 days of the date of this Order, Local 38 shall submit a supplemental filing which consists of either:

(a) a declaration, under penalty of perjury, from MKA that clarifies that that portion of the chargeability definition which includes:

(1) the costs of "communications with community organizations, civic groups, government agencies and the media respecting the Local's position on **work-related matters**," and

(2) lobbying and legislative activities with respect to matters concerning employees' **work-related issues**"

was construed by MKA in a manner consistent with *Lehnert* and this Order, or

(b) a revised schedule from MKA that recalculates the chargeable and non chargeable amounts involved in the two categories specified above in accordance with this Order and *Lehnert,* and defines the terms "work-related matters," and "work-related issues" in a corresponding manner.

2. Within 14 days of the date of this Order, Local 38 shall also serve on plaintiffs either the above referenced declaration or revised schedule, along with a notice that (1) specifies that plaintiffs have an opportunity to object to the amount of the agency fee requested, (2) sets forth a reasonable time to lodge any objection and request for arbitration, (3) that clearly indicates where such objection should be lodged, and (4) that explains that, if an objection is lodged, any amounts reasonably in dispute shall be placed in escrow pending resolution of such objection. Plaintiffs shall have five days from the date of service to respond. Such response *shall be limited* to any objections to the Union's supplemental filing.

3. It is FURTHER ORDERED that Local 38 can not recover agency fees retroactively.

4. It is FURTHER ORDERED that the parties shall appear on Tuesday, August 27, 1991 at 3:00 p.m. for a status conference to address how to proceed with respect to plaintiffs' punitive damages claim. Status conference statements limited to this issue shall be filed 5 days in advance of the status conference.

IT IS SO ORDERED.