Anthony LARAMIE, Rex O. Wonnell, Jr., Herb Mauldin, Ronald McNay, Christina J. McNay, Victoria Archibald, Jane Jaeger, David Kemp, Sally Vanderford, and Jerry Wood, Plaintiffs,

v.

COUNTY OF SANTA CLARA and Local 715, S.E.I.U., AFL–CIO, Defendants.

No. C–91–20231–WAI.

United States District Court, N.D. California.

March 5, 1992.

W. James Young, Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., A. Roger Jeanson, Berman, Berkley & Laskey, San Francisco, Cal., for plaintiffs.

Steward Weinberg, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., Steven M. Woodside, County Counsel, James Rumble, Deputy County Counsel, San Jose, Cal., for defendants.

**1494**

## ORDER

INGRAM, District Judge.

Plaintiffs' motion for summary judgment and motion to strike came before the court on October 1, 1991. Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part as set forth below and their motion to strike is DENIED.

## BACKGROUND

This action involves a challenge by ten plaintiffs[1] to the constitutionality of the procedural scheme used by Local 715, Service Employees International Union, AFL–CIO ("Union") and the County of Santa Clara ("County") for the calculation and collection of fair-share fees (a.k.a. "agency" or "service" fees) from nonmembers in light of *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. ——, 111 S.Ct. 1950, 1960–61, 114 L.Ed.2d 572 (1991), *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), and *Grunwald v. San Bernardino City Unified School Dist.*, 917 F.2d 1223 (9th Cir.1990).

Under the above authority, union collection of fair-share fees from nonmembers is consistent with the first and fourteenth amendments if the following three requirements are satisfied:

1) The union must provide nonmembers with an audited financial statement that identifies the major categories of expenses, and divides them into chargeable and nonchargeable expenses;

2) The union must provide nonmembers with an opportunity to object to the amount of the fair-share fee sought, and any amount reasonably in dispute must be escrowed; and

3) Prompt arbitration must be provided to resolve any objection over the amount of the fair-share fee.

The Supreme Court has described the balance sought between the competing interests of labor peace and free speech by stating that "[T]he objective must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." *Abood v. Detroit Board of Education*, 431 U.S. 209, 237, 97 S.Ct. 1782, 1800, 52 L.Ed.2d 261 (1977).

This action was filed on November 15, 1990. Plaintiffs are employees of the County and are in a bargaining unit represented by the Union. Acting under color of state law, i.e. the Meyers–Milias–Brown Act, Cal.Gov't Code § 3500 *et seq.* (West 1989 & Supp.1992), defendants have entered into a series of collective bargaining agreements ("CBAs") controlling the terms and conditions of plaintiffs' employment. Since February 1984, these CBAs have contained an agency shop provision which required each member of the bargaining unit who is not a member of the Union to pay a fair-share fee to the union in lieu of union membership dues. Each of the plaintiffs assert that they are nonmembers of the Union.

In addition to their motion for summary judgment, plaintiffs have also filed a motion to strike the first two sentences of the fifth paragraph of Union administrative assistant Liz Bettencourt's declaration.

Plaintiffs seek declaratory judgment that the past fair-share fee withholdings were unconstitutional, a permanent injunction against future withholdings until the Union implements adequate procedures for the collection of fair-share fees, and an order that defendants pay to the plaintiffs all fees, plus interest, previously withheld.

## DISCUSSION

### I. *The Motion to Strike*

 Plaintiffs move to strike the first two sentences of the fifth paragraph of the Bettencourt declaration. The sentences state, "As to Archibald and Kemp, both of them are carried on our records as full

---

**1.** Plaintiffs Verlie Mehrkens and Harold M. Johnson were dismissed for lack of standing on

September 30, 1991.

members. Archibald has been carried as a member since June 16, 1985."

Plaintiffs argue that the passage constitutes inadmissible hearsay and contravenes the best evidence rule. Fed.R.Evid. 802 and 1002. Defendants respond that "The purpose of the Bettencourt declaration was not to prove the truth of the content of the records, but rather to explain why the Union believes that plaintiffs Archibald and Kemp have no standing to proceed in the matter." In other words, defendants argue that the passage explains the Union's state of mind; it explains why it took the action of withholding membership dues and not fair-share fees.

The relevant issue is that the Union claims to have withheld *dues* from Archibald and Kemp. The fact that there is a dispute over whether the Union did so in the proper exercise of its rights does not mean that the evidence is inadmissible. The court finds that the disputed testimony is admissible for the purposes asserted by the Union. Accordingly, the court denies plaintiffs' motion to strike the first two sentences of paragraph five of the Bettencourt declaration.

## II. The Motion for Summary Judgment

A party can move for summary judgment if the pleadings and supporting material "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In pursuing this action under 42 U.S.C. § 1983, plaintiffs claim that:

1) They have not received any notice or financial disclosure since December 29, 1988;

2) due to this lack of notice, they were deprived of their right to challenge the calculation of the fair-share fee;

3) the Union may not charge nonmembers different amounts of fair-share fees; and

4) even if the Union did send its required annual notice in 1990, it was constitutionally inadequate for the following six reasons:

1. The financial information contained in the notices the Union claims to have sent on December 29, 1988, July 12, 1989, and July 16, 1990 is identical and therefore *per se* inadequate.

2. The notice does not adequately break down the major categories of chargeable expenses;

3. The financial information was not verified by an independent auditor;

4. The notice lacks adequate financial disclosure of Union affiliates which receive a portion of the fees;

5. The Union's definition of chargeable activities and method of calculation are vague and overbroad.

6. Requiring nonmembers to object to the calculation of fair-share fees via certified mail is unconstitutionally burdensome.

Defendants contend that there are four genuine issues of material fact in dispute which preclude the granting of summary judgment:

1) the status of plaintiffs Victoria Archibald and David Kemp;

2) whether notices were sent to plaintiffs in 1989 and 1990;

3) the adequacy of the notice allegedly sent; and

4) the amount to be charged for collective bargaining expenses.

The court will address each of these areas in turn.

A. The Dispute Over the Status of Plaintiffs Archibald and Kemp is Material and Factual and Cannot Be Resolved By Summary Judgment.

█ The Union contends that plaintiffs Archibald and Kemp "have been carried throughout the period of time in question

as members, and charged full dues rather than the reduced agency fee which is in question in this proceeding." The third sentence of the fifth paragraph of the Bettencourt Declaration states that "[F]ull dues have been deducted from them, and at no time have we had any inquiries from them or the employer as to why full membership dues have been deducted from their paychecks," (Bettencourt Declaration, ¶ 5).

Plaintiffs proffer declarations which claim that 1) Archibald never joined the union, (Archibald Declaration, ¶ 4); 2) Kemp was previously a member, but withdrew his dues checkoff authorization, (Kemp Declaration, ¶ 4); 3) Archibald and Kemp were treated as nonmembers in that they received the 1988 notice of fair-share fees, (Archibald and Kemp Declarations, ¶ 6); 4) their attorney filed an objection and challenge under the 1988 notice, (Archibald and Kemp Declarations, ¶ 7); 5) they were previous plaintiffs against the Union in a state suit and alleged they were nonmembers; and 6) the Union did not contest that fact in the state suit.

Plaintiffs cite the above evidence and contend that the Union had every opportunity to believe that Archibald and Kemp were nonmembers. While the balance of evidence may be in favor of plaintiffs on this point, the court's role in deciding a motion for summary judgment is not one of comparing declarations and choosing the ones it finds true or untrue. The conflicting evidence only illustrates that there is a material factual dispute regarding the status of plaintiffs Archibald and Kemp. Therefore, these two plaintiffs are ordered severed from this motion. The claim that they were nonmembers of the Union and therefore improperly charged full union dues will be set for trial.

**B. The Dispute Over the Mailing of Notices in 1989 and 1990 is Immaterial.**

Defendants contend that they mailed the required notice to plaintiffs in 1989 and 1990. They assert that this evidence illustrates the existence of a material factual dispute which precludes granting summary judgment. However, defendants admit that the notices and financial information which they claim to have mailed on July 12, 1989 and July 16, 1990 was *identical* to the notice and data mailed on December 29, 1988. Even assuming that the notices were sent, they would have failed to comply with the requirements of *Hudson*. *See* discussion *infra* parts C.1, 4–6. Therefore, the court finds that the dispute over whether notices were actually sent in 1989 and 1990 is immaterial.

**C. The Adequacy of the Notice Presents A Legal Question For the Court.**

■ Defendants argue, without citing any authority, that the adequacy of the notice is a factual issue. However, previous fair-share fee cases construing *Hudson* have found that questions regarding the adequacy of union notice and procedures are legal ones, and may be resolved on motions for summary judgment. *See Tierney v. City of Toledo*, 917 F.2d 927, 931 (6th Cir.1990); *Mitchell v. Los Angeles Unified School Dist.*, 739 F.Supp. 511, 514 (C.D.Cal.1990); *Weaver v. University of Cincinnati*, 764 F.Supp. 1241, 1244 (S.D.Ohio 1991).

The court will now examine the six alleged deficiencies of the Union's notice and procedures.

**1. The Absence of Financial Information**

■ *Hudson* clearly implies that annual, updated financial disclosure of union expenses is required. Unions must provide nonmembers with "an adequate explanation for the advance reduction of dues." *Hudson*, 475 U.S. at 309, 106 S.Ct. at 1077. Recognizing the difficulty in requiring exact figures from a union engaging in ongoing operations, the Court permitted the union to extrapolate from prior fiscal year data as the basis for future charges. "[T]he Union cannot be faulted for calculating its fee on the basis of its expenses during the preceding year." *Id.* at 307, n. 18, 106 S.Ct. at 307, n. 18.

The Ninth Circuit has confirmed this interpretation of *Hudson* and held that un-

ions must provide annually updated financial information. "[T]he San Bernardino Teachers Association must first determine the percentage of union expenses spent on activities unrelated to collective bargaining and then calculate the advance reduction from the nonmembers' dues before it can make any deductions." *Grunwald,* 917 F.2d at 1228.

In 1989 and 1990, the Union simply mailed out the same notice and financial data that it used to calculate the 1988 fair-share fee. This failure to update its financial information prevented the plaintiffs from challenging the calculation of the fee. Thus, the Union's failure to provide annually updated financial information in the notices allegedly sent on July 12, 1989, and July 16, 1990 is a violation of the requirements of *Hudson.*

### 2. The Breakdown of Charges

■ Plaintiffs complain that the Union has failed to adequately break down a list of those charges which it has deemed chargeable and nonchargeable to fair-share fee payors. The Supreme Court has provided guidance on the issue of what constitutes adequate financial disclosure. A unanimous Court in *Hudson* stated:

> The Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor.

*Hudson,* 475 U.S. at 308, n. 18, 106 S.Ct. at 1076, n. 18.

The Union's notice to service fee payors was eight single-spaced pages long. It consisted of an invitation of membership to nonmembers; a complete explanation of fair-share fees and the Union's method of calculating the fee; a list of nineteen chargeable categories of expenses for which the Union claims it may legally withhold fair-share fees; a list of six nonchargeable categories of expenses for which the Union claims it may not withhold fair-share fees; a summary financial report which included financial data setting forth the qualifying expenditures which are chargeable to fair-share fee payors; the

name, address and telephone number of the accounting firm which verified the financial information; instructions to nonmembers on how to challenge the fair-share fee determination; and a detailed description of the third party/impartial procedure with the American Arbitration Association for those nonmembers wishing to challenge their fair-share fee.

The overriding theme of *Abood, Hudson, Lehnert,* and the myriad cases applying their holdings, is that Unions must provide enough information to nonmembers so that they may understand the charges and then reasonably challenge the basis of the fair-share fee. Plaintiffs are not entitled to summary judgment on this issue, since the evidence before the court indicates substantial compliance by the Union with the requirements of law.

### 3. The Role of The Independent Auditor

■ Plaintiffs argue that the Union has failed to meet its obligation to provide verification of its financial information by an independent auditor. The Supreme Court plainly stated adequate disclosure of union expenditures would include "[T]he major categories of expenses, as well as verification by an independent auditor." *Hudson,* 475 U.S. at 307, n. 18, 106 S.Ct. at 1076, n. 18.

The auditor's letter in the instant case states in part that "Based on our review, nothing came to our attention that caused us to believe that the accompanying summary financial report is not presented in conformity with the measurement and disclosure criteria set forth in the notes to the summary financial report."

Plaintiffs would have the independent auditor pass judgment on the "veracity of the Union's chargeable/nonchargeable allocation." However, most courts have agreed that the role of the auditor is to "[E]nsure that the usual function of an auditor is fulfilled. That usual function is to ensure that the expenditures which the union claims it made for certain expenses were actually made for those expenses." *Andrews v. Education Association of Che-*

*shire*, 829 F.2d 335, 340 (2nd Cir.1987); *accord Ping v. National Education Association*, 870 F.2d 1369, 1374 (7th Cir.1989); *Lowary v. Lexington Local Bd. of Education*, 704 F.Supp. 1456, 1461, 1466 (N.D.Ohio 1988), *rev'd on other grounds*, 903 F.2d 422 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 385, 112 L.Ed.2d 396 (1990); *Contra Mitchell*, 739 F.Supp. at 514–15; *Hohe v. Casey*, 727 F.Supp. 163, 167 (M.D.Pa.1989), *aff'd in part and vacated in part*, 956 F.2d 399 (3rd Cir.1992).

Plaintiffs' interpretation of the verification requirement of *Hudson* is too broad because it would have the auditor function both as an accountant and as an independent decisionmaker regarding proper chargeability. The court finds that plaintiffs are not entitled to summary judgment on this issue because the Union's procedures comply with constitutional requirements.

### 4. Disclosure of Payments to Union Affiliates

■ Next, plaintiffs assert that the Union's financial disclosure is inadequate because it fails to include an audited, detailed accounting of local union payments to affiliated state and national labor organizations. The Court in *Hudson* spoke directly to this issue.

> With respect to an item such as the Union's payment of $2,167,000 to its affiliated state and national labor organizations, for instance, either a showing that none of it was used to subsidize activities for which nonmembers may not be charged, or an explanation of the share that was so used was surely required.

*Hudson*, 475 U.S. at 308, n. 18, 106 S.Ct. at 1076, n. 18.

The Union's December 31, 1988 summary financial report lists as an entry "Office and administrative expenses: Total Union = $994,520; All Bargaining Units = $770,-147." The notes to the report include a "Basis For Allocations" section. The office and administrative entry within this section lists eight affiliates which received payments from the Union. The notes state that "The above cost allocations are based on audited financial statements and statements of the individual organizations as to their allocation of rebatable costs."

Plaintiffs contend that this disclosure is inadequate. The court agrees. The Union must provide a more detailed explanation of these payments so that nonmembers will be able to make a more informed challenge to the fair-share fee.

This is not to say that the Union is required to audit the records of its affiliates or submit financial reports on behalf of every organization with which it is affiliated. The Union may safely rely on the statements of the individual organization as to their allocation of money between chargeable and nonchargeable costs. However, as the Supreme Court recently stated,

> "There must be some indication that the payment is for services that may ultimately enure to the benefit of the members of the local union by virtue of their membership in the parent organization. And, as always, the union bears the burden of proving the proportion of chargeable expenses to total expenses."

*Lehnert*, 111 S.Ct. at 1961–62.

In this case, the Union's notice is inadequate because it fails to clearly explain what portion of its affiliate payments are chargeable.

### 5. Definitions of Chargeable Activities and Method of Calculation

Plaintiffs assert that the Union's definition of chargeable activities and method of calculation are vague and overbroad.

#### a). Definitions of Chargeable Activities

■ Last year, the Supreme Court sought to clarify which expenditures are chargeable to nonmembers.

> [*Railway Employees v.*] *Hanson* [351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956)] and [*Machinists v.*] *Street* [367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961)] and their progeny teach that chargeable activities must 1) be "germane" to collective-bargaining activity; 2) be justified by the government's vital policy interest in labor peace and avoiding "free riders"; and 3) not significantly add to the burdening of free speech that

is inherent in the allowance of an agency or union shop.

*Lehnert,* 111 S.Ct. at 1959.

A majority of the Court held that chargeable expenditures include: 1) activities which ultimately benefit, even indirectly or intangibly, the members of the local union by *virtue of their membership* in the parent organization; 2) national costs of collective bargaining; 3) informational support services such as newsletters and newspapers which· are neither political nor public in nature; 4) attendance at labor conventions; and 5) costs of legal strikes or threatened, illegal strikes. Four of the Justices reasoned that chargeable expenditures could also include costs of litigation and lobbying which are generally related to collective bargaining agreements. *Id.* at 1961–65.

Plaintiffs incorrectly assert that the Union may only charge nonmembers for "[T]hose activities directly related to negotiating and enforcing *the* collective bargaining agreement with *the* employer." Plaintiffs' Memorandum, § III.C. That is incorrect. The Court flatly held that "Unions need not demonstrate a direct and tangible impact upon the dissenting employee's unit." *Lehnert,* 111 S.Ct. at 1962.

The Union's notice lists twenty-five categories of chargeable and nonchargeable expenses. It is straight-forward and narrowly drawn. Of these twenty-five categories, only one is improper. One item on the list of chargeable expenses is "Social and recreational activities open to all represented workers." Such costs are decidedly not chargeable. The Union is instructed to remove this item from its list of chargeable expenses and ordered not to charge nonmembers for *the costs of* such activities. The Union's other definitions of chargeable and nonchargeable expenses are constitutionally adequate.

b). Method of Calculation

▮ Plaintiffs challenge the Union's method of calculating each individual nonmembers fair-share fee. Local 715 calcu-

lates its membership dues as 1.0% of each employee's salary, plus $1.00. Consequently, Union members pay differing amounts in dues, based upon their salary. Likewise, nonmembers pay a fair-share fee that is also based upon their salary. Fair-share fees are derived by subtracting the amount of nonchargeable expenses from total expenses. For example, if 5% of the Union's dues are expended on nonchargeable expenses, then a nonmembers' fair-share fee would be 95% of dues. Plaintiffs argue that this method is impermissible because higher salaried workers end up paying a larger fair-share fee than lower salaried workers. They argue that while this may be a permissible way for the Union to calculate dues, it is an unconstitutional method for calculating fair-share fees. However, plaintiffs have failed to provide any authority to support their argument. Courts have required that fair-share fees be, for lack of a better word, "fair." In *Hudson,* the Court used the term "proportionate." *Id.* 475 U.S. at 306, 106 S.Ct. at 1075. The Union's method of calculation results in a scheme where nonmembers pay a fair-share fee which is "proportionate,"—proportionate to their salary. Therefore, the court finds that this sense of "proportionality"—between both higher and lower salaried workers and union members and nonmembers, satisfies constitutional requirements.[2]

6. *The Certified Mail Requirement*

▮ Under the Union's procedures, nonmembers are required to file their objections to the Union's calculation of the fair-share fee via certified mail in order to invoke the arbitration provision of the notice. Plaintiffs, though unable to show any prejudice resulting from the policy, contend that the Union's requirement is unconstitutionally burdensome. The Union argues that the requirement serves a legitimate purpose by assuring that the Union receives the challenge, that plaintiffs' objec-

---

**2.** In *Hohe,* the court reached the same conclusion as this court, ruling that the *method of* calculation was not unconstitutionally arbitrary since it was "[B]ased upon a reasonable, nondis-

criminatory classification." *Hohe v. Casey,* 740 F.Supp. 1092, 1097 (M.D.Pa.1989), *vacated on other grounds,* 956 F.2d 399 (3rd Cir.1992).

tion is merely "technical," and that "it is for [plaintiffs'] own protection."

The Court in *Hudson* noted that procedures surrounding the exercise of first amendment rights should be "carefully tailored" to minimize any infringement. *Hudson*, 475 U.S. at 303, 106 S.Ct. at 1074. The Sixth Circuit has held that a certified mail requirement is unconstitutionally burdensome. "This requirement, while indeed a minor burden, is nevertheless an unnecessary one that interferes with the ability of challengers and dissenters to merely 'voice their objections.'" *Weaver v. University of Cincinnati*, 942 F.2d 1039 (6th Cir.1991); *accord Kidwell v. Transportation Communications Int'l Union*, 731 F.Supp. 192, 205 (D.Md.1990). Of course, this authority is not controlling. In light of the absence of any prejudice to these plaintiffs, and dictum from a Ninth Circuit dissenting opinion,[3] the court was disinclined to strike down the requirement. In a certain respect, plaintiffs' argument that the requirement is confusing and too complex does a disservice to their fellow working people. However, with due deference for the decisions of the federal courts in Ohio and Maryland, as well as for the rationale underlying many first amendment cases, the court strikes down the certified mail requirement as unconstitutionally burdensome.

> **D. The Question of the Correctness of Certain Union Charges is Irrelevant in Light of Defendants' Procedural Inadequacies and Not an Issue Properly Before the Court.**

Finally, defendants attempt to stave off summary judgment by arguing that there are factual disputes over which expenditures are chargeable to nonmembers. Plaintiffs correctly point out that this lawsuit is not focused on the chargeability or nonchargeability of particular expenditures—that determination is a function for the arbitrator.[4] Rather, this lawsuit is a procedural challenge to the procedural scheme used by the defendants. Therefore, this argument does not preclude the granting of summary judgment.

### III. Appropriate Remedies

"In view of the fact that plaintiffs established a constitutional violation ... the task of fashioning a proper remedy is one that should be performed by the District Court after all interested parties have had an opportunity to be heard." *Hudson*, 475 U.S. at 309, n. 22, 106 S.Ct. at 1077, n. 22. Where constitutional and federally-protected civil rights have been violated, the remedy must be designed "both to avoid the recurrence of the violation and to eliminate its consequences," *National Soc'y of Professional Engineers v. United States*, 435 U.S. 679, 697, 98 S.Ct. 1355, 1368, 55 L.Ed.2d 637 (1978), and "to remedy past wrongs." *Swann v. Charlotte–Mecklenburg Bd. of Education*, 402 U.S. 1, 15–16, 91 S.Ct. 1267, 1275–76, 28 L.Ed.2d 554 (1971) (both cases cited approvingly in *Hudson*, 475 U.S. at 309, n. 22, 106 S.Ct. at 1077, n. 22). Plaintiffs seek injunctive and declaratory relief, nominal damages and restitution of withheld fees, and attorney's fees and costs.

### A. Injunctive and Declaratory Relief

In order to protect plaintiffs' constitutional rights, the court orders that declaratory judgment is entered in favor of the plaintiffs and against the defendants. Furthermore, the defendants are permanently enjoined from taking any action to withhold fair-share fees from plaintiffs' salaries until defendants establish and implement adequate procedural safeguards as described in *Hudson, Lehnert, Grunwald*, and this order. *See Grunwald*, 917 F.2d at 1230 (remanding with an order to enter an injunction against the collection of fair-share fees until procedures are improved).

---

**3.** Judge Kozinski aptly described a similar lawsuit where plaintiffs were, as here, represented by the National Right to Work Legal Defense Foundation as *"bagatelle* litigation." *Grunwald*, 917 F.2d at 1233 (dissenting opinion).

**4.** The court refuses to be drawn into this "micro-level of dispute resolution." *Lucid v. City and County of San Francisco*, 774 F.Supp. 1234, 1238, n. 4 (N.D.Cal.1991).

## B. Nominal Damages and Restitution

### 1. Nominal Damages

■ Plaintiffs request an award of nominal damages for the failure to provide adequate procedural protections prior to fair-share-fee withholdings. Nominal damages were discussed by the Supreme Court as follows:

Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.

*Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978). In light of this teaching, the court orders that each of the eight successful plaintiffs recover from defendants nominal damages in the amount of $1.00. *Hohe v. Casey*, 956 F.2d 399 (3rd Cir.1992).

### 2. Restitution

■ In addition to nominal damages, plaintiffs seek restitutionary damages of all fair-share fees which were withheld after January 1, 1989. They argue that unless the court orders return of all fair-share fees withheld, the Union will unfairly keep all "its ill-gotten gains," and that "[o]nly restitution will fully remedy the defendants' past wrongs," (Plaintiffs' Memorandum, § V.B).

The Union counters that a return of all the fair-share fees is unduly harsh in that a large portion of the previously collected fees were properly chargeable.[5] The Union argues that "full" restitution would transform plaintiffs into "free-riders" for the years in question to the extent that plaintiffs would be allowed to recover their validly chargeable expenses. This result would be contrary to the policy continually expressed by the Supreme Court. *See Abood*, 431 U.S. at 237, 97 S.Ct. at 1800; *Hudson*, 475 U.S. at 310, 106 S.Ct. at 1077; *Railway Clerks v. Allen*, 373 U.S. 113, 122, 83 S.Ct. 1158, 1163, 10 L.Ed.2d 235 (1963).

Restitution is a remedy that is ordinarily a *substitute* for damages. It is not a *type* of damages. "The damages recovery is to compensate the plaintiff, and it pays him, theoretically, for his losses. The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." Dan B. Dobbs, *Handbook on the Law of Remedies* 224 (1973).

Several courts have addressed this precise issue. In *Gilpin v. AFSCME, AFL–CIO*, 875 F.2d 1310 (7th Cir.1989), *cert. denied*, 493 U.S. 917, 110 S.Ct. 278, 107 L.Ed.2d 258 (1989), Judge Posner declined to order restitution of all fees previously withheld. "The constitutional violation was a technical one at worst, and a punitive remedy is not called for." *Id.* at 1315. Similarly, in *Lowary v. Lexington Local Bd. of Education*, 903 F.2d 422 (6th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 385, 112 L.Ed.2d 396 (1990), the Sixth Circuit decided that a return of all fair-share fees undermined the policy concerns of Supreme Court decisions. The court concluded "[t]hat plaintiffs are entitled to recover only the nonchargeable portion of the unconstitutionally collected fees." *Id.* at 433. *See e.g., Hohe*, 956 F.2d at 416; *Pilots Against Illegal Dues v. Air Line Pilots Ass'n*, 938 F.2d 1123, 1133 (10th Cir.1991).[6]

---

**5.** For example, an arbitrator previously found that 86% of union dues were chargeable as fair-share fees.

**6.** The court is mindful that some lower courts have reached other results. *See Lucid*, 774 F.Supp. at 1239, and *Jordan v. City of Bucyrus*, 739 F.Supp. 1124 (N.D.Ohio 1990). *Lucid* is a case decided by a Judge of this court. It is apparent from a reading of the opinion that the court was not presented with any authority, such as *Hohe*, 956 F.2d at 416, *Pilots*, 938 F.2d at 1133 (10th Cir.1991), *Lowary*, 903 F.2d at 433 (6th Cir.1990), or *Gilpin*, 875 F.2d at 1315 (7th Cir.1989).

Each of these courts reasoned that allowing unions to retain the chargeable portions of unconstitutionally collected fees does not create a disincentive for unions to comply with *Hudson*. As the Supreme Court stated in *Carey*, "To the extent ... Congress intended [that] the awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages." *Carey*, 435 U.S. at 256–57, 98 S.Ct. at 1048–49 (citation omitted). *See also Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). The court is also cognizant of the incentive for compliance provided by the high cost of modern litigation and the vigilance of fair-share fee payors and their attorneys. *See Gilpin*, 875 F.2d at 1315.

In the present case, the Union's greatest error was its failure to update its notice to fair-share fee payors with financial information. There is no evidence that defendants maliciously or oppressively flouted plaintiffs' constitutional rights. Revealingly, plaintiffs do not request punitive damages. In any case, the court sees no conceivable basis for such an award based on the facts of this case. Therefore, the court orders that plaintiffs are entitled to recover an amount equal to the total of the nonchargeable portions of the collected fair-share fees, plus accrued interest.

### 3. Calculation of The Nonchargeable Amount

█ The Supreme Court has suggested that courts should not involve themselves in the factual inquiries involved in making a chargeability determination. *See Allen*, 373 U.S. at 122–24, 83 S.Ct. at 1163–65; *Abood*, 431 U.S. at 240, 97 S.Ct. at 1802.[7] While the court theoretically could conduct a trial to determine the proper amount of restitution, i.e., the nonchargeable portions of the collected fair-share fees, the wisest

course is to refer the determination to an arbitrator. This was the option approved by the Sixth Circuit in *Lowary*, 903 F.2d at 433, and the court is persuaded that it is the correct path to take here.[8]

Plaintiffs' reliance on the recent *Hohe* decision is misplaced. *Hohe* simply stands for the proposition that *legal* questions over chargeability could not be referred to arbitrators. In this case, the court itself ruled that, with one exception, the Union's chargeable categories were constitutional. The court is merely using an arbitrator for an accounting of the proper fair-share fee. This use of the arbitrator is exactly in keeping with the Supreme Court's recommendations. Thus, plaintiffs' contention that such a remedy is "wholly inappropriate" is without legal basis.

### C. Attorneys' Fees and Costs

█ The court finds that plaintiffs' are entitled to an award of their reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988. *See also Grunwald*, 917 F.2d at 1230.

### CONCLUSION

Having considered the papers, submissions, and arguments submitted by the parties, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Judgment is hereby entered, pursuant to 28 U.S.C. § 2201, declaring that:

a) the collective bargaining obligations between the County of Santa Clara ("County") and Local 715, S.E.I.U., AFL–CIO ("Union") pertaining to the withholding of fair-share fees are unenforceable as to the plaintiffs in the absence of procedures that comply with the requirements of *Hudson, Lehnert,* and *Grunwald;* and

b) the actions of the defendants in withholding the fair-share fees from the plaintiffs in the absence of procedures which comply with the requirements of *Hudson*

---

7. *See also Tierney v. City of Toledo*, 824 F.2d 1497, 1504–05 (6th Cir.1987); *Lucid*, 774 F.Supp. at 1238, n. 4.

8. The court noted in *Lowary* that while an independent arbitrator's determination would be en-

titled to great weight, "[A]ny determination 'would not receive preclusion effect in a subsequent § 1983 action.'" *Id.* at 433 (citations omitted).

have violated, and continue to violate, the plaintiffs' first, fifth, and fourteenth amendment rights; and

c) the "Notice to Service Fee Payers: Santa Clara County," sent to plaintiffs on December 29, 1988, and allegedly sent to plaintiffs on July 12, 1989 and July 16, 1990, did not and does not meet the constitutional requirements for such procedures and notice as described by *Hudson* because:

i) the financial information is not and has not been annually updated;

ii) the Union's disclosure of payments to its affiliates is insufficient as it fails to fully explain the chargeable portions of those payments, and thus prevents non-members from making a more informed challenge to the fair-share fee;

iii) the item related to Union social and recreational activities on the Union's list of chargeable expenses is nonchargeable and impermissible; and

iv) the Union's certified mail requirement is unconstitutionally burdensome.

2. Judgment is hereby entered in favor of plaintiffs Anthony Laramie, Rex O. Wonnell, Jr., Herb Mauldin, Ronald McNay, Christina McNay, Jane Jaeger, Sally Vanderford and Jerry Wood, and against defendants on the issue of liability pursuant to 42 U.S.C. § 1983.

3. The determination of damages is referred to an impartial decisionmaker: the American Arbitration Association. The arbitration shall focus on the proper amount of restitutionary damages as discussed in this order.

4. Defendants are enjoined from taking any further steps to withhold fair-share fees from nonmembers until a constitutionally adequate plan consistent with *Hudson, Lehnert, Grunwald,* and this order is in place.